**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SHLOMY ERBA<br>67 Ben Gurion Avenue<br>Tel Aviv, Israel<br><br>And<br><br>NISIM PROPERTIES, LLC<br>67 Ben Gurion Avenue<br>Tel Aviv, Israel<br><br>    Plaintiffs<br><br>                    v.<br><br>ABC CAPITAL RE, LTD.<br>1218 N. Marshall St.<br>Philadelphia, PA 19122<br><br>and<br><br>LEGACY RENTALS PHILLY LLC<br>1218 N. Marshall St.<br>Philadelphia, PA 19122<br><br>and<br><br>JASON WALSH a/k/a JAY WALSH<br>1218 N. Marshall St.<br>Philadelphia, PA 19122<br><br>and<br><br>ABC CAPITAL RE<br>1218 N. Marshall St.<br>Philadelphia, PA 19122<br><br>and<br><br>ABC CAPITAL INVESTMENTS, LLC,<br>305 N. 3rd St.<br>Philadelphia, PA 19122<br><br>and | **CIVIL ACTION COMPLAINT**<br>**No.**<br><br>**JURY TRIAL DEMAND** |

1

ABC CAPITAL REALTY, LLC
305 N. 3rd St.
Philadelphia, PA 19122

and

GIOVANNI REAL ESTATE, LLC
1218 N. Marshall St.
Philadelphia, PA 19122

and

NEW PHILLY CONSTRUCTION LLC
1218 N. Marshall St.
Philadelphia, PA 19122

and

STATESIDE-PHILLY, LLC
1218 N. Marshall St.
Philadelphia, PA 19122

and

ABC HORIZON, LLC,
1218 N. Marshall St.
Philadelphia, PA 19122

and

PHILLY METRO BUILDERS, LLC
4235 Main Street
Philadelphia, PA 19127

and

ABC CAPITAL FINANCE, LLC
1218 N. Marshall Street
Philadelphia, PA 19122

and

ABC CAPITAL HOLDINGS, LLC
1218 N. Marshall Street
Philadelphia, PA 19122

and

ABC CAPITAL INCOME FUND, LLC
1218 N. Marshall Street
Philadelphia, PA 19122

and

AMIR VANA
305 N. 3rd Street
Philadelphia, PA 19122

and

YARON ZER
305 N. 3rd Street
Philadelphia, PA 19122

and

John Does 1-10

   Defendants

## CIVIL ACTION COMPLAINT

Plaintiffs Shlomy Erba and Nisim Properties LLC (hereinafter "Plaintiffs") hereby complains as follows against Defendants ABC Capital Re Ltd, and its associated entities and individuals (hereinafter "Defendants") for breach of contract, unjust enrichment, fraud, violations of Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO").

## INTRODUCTION

1.    Plaintiffs initiate the instant action to redress violations by Defendants of the UTPCPL, RICO, breach of contract, unjust enrichment, and fraud. Defendants constituted a corrupt enterprise under RICO ("RICO Enterprise"), designed to defraud individuals by marketing to them "one-stop," "hands-off" investments in "income-producing properties," i.e.,

rental properties. In short, the RICO enterprise promised investors like Plaintiffs that in exchange for the purchase price of a rental property, the RICO enterprise would renovate the property, rent the property, and manage the property. In addition, the RICO enterprise guaranteed the rental income for the first twelve months, and allowed the investor to purchase additional guaranteed rental income. In reality, the RICO enterprise would not conduct the promised renovations and would not rent the property. On information and belief, the RICO enterprise operated as a pyramid scheme, such that new investors money was being paid to pay prior investors' guaranteed rental income. Plaintiff purchased a rental property in Philadelphia pursuant to the RICO scheme, and has suffered damages as detailed below.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over Plaintiffs' federal law claims pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 367.

3.     This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this judicial district are sufficient for the exercise of personal jurisdiction to comply with traditional notions of fair play and substantial justice.

4.     Pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), venue is properly laid in this district because the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district and Defendants are deemed to reside where it is subject to personal jurisdiction, rendering Defendants residents of this judicial district.

## PARTIES

5.     The foregoing paragraphs are incorporated herein as if set forth in full.

6.      Plaintiff Shlomy Erba is an adult individual and Israeli citizen, with an address as set forth in the caption.

7.      Plaintiff Nisim Properties LLC is an Israeli limited liability company whose sole owner, member, and/or officer is Plaintiff Shlomy Erba.

8.      Defendant ABC Capital RE LTD is a limited liability company existing by virtue of and operating under the laws of the Commonwealth of Pennsylvania, with its primary place of business at the above-captioned address and is a member of the RICO Enterprise.

9.      Defendant ABC Capital RE is a limited liability company existing by virtue of and operating under the laws of the Commonwealth of Pennsylvania, with its primary place of business at the above-captioned address and is a member of the RICO Enterprise.

10.      Defendant, ABC Capital Investments, LLC is a limited liability company existing by virtue of and operating under the laws of the Commonwealth of Pennsylvania, with its primary place of business at the above-captioned address and is a member of the RICO Enterprise.

11.      Defendant Legacy Rentals Philly LLC is a limited liability company existing by virtue of and operating under the laws of the Commonwealth of Pennsylvania, with its primary place of business at the above-captioned address and is a member of the RICO Enterprise.

12.      Defendant ABC Capital Realty, LLC is a limited liability company existing by virtue of and operating under the laws of the Commonwealth of Pennsylvania, with its primary place of business at the above-captioned address and is a member of the RICO Enterprise.

13.      Defendant Giovanni Real Estate, LLC is a limited liability company existing by virtue of and operating under the laws of the Commonwealth of Pennsylvania, with its primary place of business at the above-captioned address and is a member of the RICO Enterprise.

14.     Defendant New Philly Construction, LLC is a limited liability company existing by virtue of and operating under the laws of the Commonwealth of Pennsylvania, with its primary place of business at the above-captioned address and is a member of the RICO Enterprise.

15.     Defendant Stateside Philly LLC is a limited liability company existing by virtue of and operating under the laws of the Commonwealth of Pennsylvania, with its primary place of business at the above-captioned address and is a member of the RICO Enterprise.

16.     Defendant ABC Horizon LLC is a limited liability company existing by virtue of and operating under the laws of the Commonwealth of Pennsylvania, with its primary place of business at the above-captioned address and is a member of the RICO Enterprise.

17.     Defendant ABC Capital Finance, LLC is a limited liability company existing by virtue of and operating under the laws of the Commonwealth of Pennsylvania, with its primary place of business at the above-captioned address and is a member of the RICO Enterprise.

18.     Defendant ABC Capital Holdings, LLC is a limited liability company existing by virtue of and operating under the laws of the Commonwealth of Pennsylvania, with its primary place of business at the above-captioned address and is a member of the RICO Enterprise.

19.     Defendant ABC Capital Income Fund, LLC is a limited liability company existing by virtue of and operating under the laws of the Commonwealth of Pennsylvania, with its primary place of business at the above-captioned address and is a member of the RICO Enterprise.

20.     Defendant Philly Metro Builders, LLC, formerly known and registered as Home Cash 1031, LLC, is a limited liability company existing by virtue of and operating under the laws

of the Commonwealth of Pennsylvania, with its primary place of business at the above-captioned address and is a member of the RICO Enterprise.

21.     Defendant Jay Walsh is an adult individual with a primary workplace at the above-captioned address and is a member of the RICO Enterprise. As Defendant Jay Walsh was the "Co-Founder" of Defendant ABC Capital Investments, LLC, the original "ABC" entity, it is believed and therefore averred that Defendant Jay Walsh is personally knowledgeable of the "pattern of racketeering activities" described herein.

22.     Defendant Amir Vana is an adult individual with a primary workplace at the above-captioned address and is a member of the RICO Enterprise. As Defendant, Amir Vana was the "Co-Founder" of Defendant ABC Capital Investments, LLC, the original "ABC" entity, it is believed and therefore averred that Defendant, Amir Vana is personally knowledgeable of the "pattern of racketeering activities" described herein.

23.     Defendant Yaron Zer is an adult individual with a primary workplace at the above-captioned address and is a member of the RICO Enterprise. As Defendant Yaron Zer was the "Co-Founder" of Defendant ABC Capital Investments, LLC, the original "ABC" entity, it is believed and therefore averred that Defendant Yaron Zer is personally knowledgeable of the "pattern of racketeering activities" described herein.

24.     Defendants, John Does 1-10, is a moniker/fictitious name for individuals and entities currently unknown but will be substituted when known, as affiliated, associated or liable hereunder for the reasons set forth below or inferred therefrom. Each of these parties are incorporated as Defendants in each and every count and averment listed above and below. Upon information and belief, Defendants, John Does, were agents, servants, workmen, employees,

affiliates, and/or co-conspirators of Co-Defendant(s) and/or members of the RICO Enterprise, liable to Plaintiffs hereunder.

25.    The term RICO Enterprise as used herein will refer collectively to Defendants identified above as members of the RICO enterprise.

26.    The term ABC or ABC entities as used herein will refer collectively to the Defendants involved in: (a) the sale-of-rental-properties enterprise and/or the (b) RICO enterprise.

27.    At all times relevant herein, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and the scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

28.    The foregoing paragraphs are incorporated herein as if set forth in full.

29.    In late 2016, Plaintiff Erba learned of a "guaranteed investment opportunity" in which Defendant ABC Capital Investments and/or other members of the RICO enterprise would provide guaranteed annual returns on income-producing properties.

30.    Erba inquired further, and learned that the ABC entities sold rental properties to individuals in which, in exchange for a single purchase price, ABC would: (a) select and coordinate the purchase of a rental property in Philadelphia; (b) coordinate a full renovation of the property to be completed within 60 days, including a new roof with a 15-year warranty, plumbing, electrical, suppling new appliances, including water heaters and boilers, with 60-days; (c) manage the property, including finding tenants, with the cost of finding tenants borne by ABC for the first year; and (d) guarantee the rental income for a year.

31.     Erba reviewed ABC Capital's website, which disclosed that the return on investment was 10%-40%.

32.     Erba communicated with Defendant Yaron Zer who explained to Erba the details set forth above, and further explained that the RICO enterprise would assist Erba in setting up a United States company, Plaintiff Nisim Properties LLC.

33.     Pursuant to and in reliance of the representations from Defendant Zer and the information on ABC's website, on or around October 10, 2016, Erba, through Nisim Properties, purchased 29 S. Salford Street, Philadelphia PA 19143 ("29 S Salford") from ABC Capital Investments, LLC for $68,500, and agreed to retain ABC Capital Investments LLC as the property manager.

34.     The Agreement of Sale provided that the renovation was worth $35,000, that the new roof was warrantied for 15 years, and that ABC would rent the property.

35.     Approximately two months after the purchase, Erba asked Defendant Zer if the renovations had been completed and learned from Defendant Zer learned that Defendants had not commenced the renovations of 29 S Salford and the property remained uninhabitable and unrented.

36.     Erba continued to question Defendants about the renovations every few months, and each time was assured that there was just a delay and that his property was next in line to be renovated.

37.     Erba learned from two friends that Defendants were running a corrupt scheme in which it was selling rental properties to individuals, especially foreign nationals, promising to renovate, rent, and manage the properties, but in actually leaving the residences unrenovated and only paying the single year of guaranteed rental income.

38.     Erba paid $5000 to a lawyer in connection with the purchase and sale of the property.

39.     Erba expended $1100 in 2017, $2731 in 2018, $2506 in 2019, and $220 on expenses related to the property, for a total of $6557 in expenses.

40.     In Fall 2018, Defendants stopped sending the guaranteed rent payments entirely, and Erba began to suspect that Defendants' operation was a scam.

41.     In October 2018, Erba met with Defendant Zer about the ongoing issues with the property, including the failure to renovate and make it habitable.

42.     On October 2, 2018, Defendant Zer sent Erba an email with a commitment to finish the renovation by January 15, 2019.

43.     In or around the end of 2018, after Erba complained about Defendants' breach of their obligations and the illegal Ponzi scheme Defendants were operating, Defendants agreed to facilitate the resale of the property.

44.     On or around February 13, 2019, Defendant Zer sent Erba an email committing to repurchase the property from Erba.

45.     On or around February 17, 2019, Erba retained the Israeli attorney Rami Sade to help resolve the issues with the property.

46.     On or around April 24, 2019, Erba signed an agreement to sell the property.

47.     Defendants arranged the resale of the property for a purchase price of $57,000, between Erba and Nisim Properties as the sellers, and Defendant Legacy Rentals Philly, LLC, a sister company of ABC, with a settlement date of April 26, 2019. Erba's net from the sale was $49,000.

48.     From Erba initially taking ownership in 2016, until Erba sold the property in mid-April 2019, the property was never renovated, rendered inhabitable, or rented.

49.     On information and belief, Defendants resold the subject premises to another entity for $64,690 on October 24, 2019.

50.     In addition, Defendants attempted to secure a general release ("Release Agreement") from Erba related to the property and to make Erba covenant to bring any claim for breach of the settlement agreement in arbitration to be conducted in Philadelphia, PA in exchange for a monthly payment of $1000 for a period of 15 months.

51.     Defendants negotiated a joint release with Erba and two other Israeli investors who were previous associates of Erba, Natalie Zilberman and Tamasgan Sanveto.

52.     During the negotiation of the release, Erba learned from Natalie Zilberman and Tamasgan Sanveto that they had been similarly victimized by ABC's false representations about the risk-free nature of the investment, that the properties in question would be renovated and rented out, and also learned that, unlike him, Zilberman and Sanveto had never even received the deed the properties they believed they had purchased from ABC.

53.     Erba, Zilberman, and Sanveto jointly signed the Release Agreement on September 5, 2019.

54.     Defendants procured the general release and the arbitration agreement by fraud in the inducement, as Defendants never had any intention of complying with the agreement.

55.     Defendants paid Erba $1000 on September 24, 2019, another $1000 on October 24, 2019, and an additional $2000 on March 3, 2020, but made no further payments pursuant to the Release.

56.     On June 8, 2020, Erba reached out to ABC's counsel, Andrew Swain, inquiring as to the reason for the breach.

57.     Swain responded by email on June 8, 2020, stating that "COVID-19 closed all regional real estate companies months ago" and that ABC had not been able to make the payments due to COVID-19 but ABC stands committed to fulfilling its obligations, but it would "be several months before business resumes and likely 6 months before it returns as before."

58.     Swain further stated that he would keep Erba updated on payments.

59.     Erba did not hear anything further from ABC or any of its representatives through the rest of 2020 and through the entire year of 2021.

60.     On December 17, 2021, Erba, through counsel, sent a letter to Defendant Jason Walsh and attorney Andrew Swain inquiring again about the breach.

61.     Andrew Swain communicated to Plaintiffs through counsel that Defendants had interest in paying Plaintiffs the outstanding $11,000 but wanted a payment plan.

62.     Though Plaintiffs agreed to offer a short payment plan, Defendants never agreed to resume payments, and has not made any additional payments.

63.     Defendant has made no other efforts to cure or explain the reason for the continuing breach of the settlement agreement.

**RICO ENTERPRISE ALLEGATIONS**

64.     Defendant ABC Capital Investments, LLC was founded by Defendants Jay Walsh, Amir Vana, and Yaron Zer in or around March 2011.

65.     Over the following decade, Defendant, ABC Capital Investments, LLC, at the direction of, inter alia, Defendants, Jay Walsh, Amir Vana, and Yaron Zer, created a network of

ABC affiliates that work in conjunction with each other in the Miami, Baltimore, and Philadelphia markets, including, but not limited to:

    a. Defendant, ABC Capital RE LTD, which, upon information and belief, focuses of the purchase, sale, and management of real estate in the greater Philadelphia area;

    b. Defendant, ABC Capital - Baltimore, LLC, which, upon information and belief, focuses of the purchase and sale of real estate in the greater Baltimore area;

    c. Defendant, ABC Capital Miami, LLC, which, upon information and belief, focuses of the purchase and sale of real estate in the greater Miami area;

    d. ABC Management – Baltimore, LLC, which, upon information and belief, focuses of the renovation and management of real estate in the greater Baltimore area; and,

    e. Defendant, Philly Metro Builders, LLC, which, upon information and belief, focuses of the renovation of real estate in the greater Philadelphia area.

66. It is believed and therefore averred that Defendants, ABC Capital Finance, LLC, ABC Capital Holdings, LLC, ABC Capital Income Fund, LLC, and ABC Capital Realty, LLC are all additional members of RICO Enterprise that serve "back-office", rather than client-facing, aspects of the RICO Enterprise.

67. Defendant, ABC Capital RE, LTD currently maintains a website at www.abccapitalinvestments.com, which, as of July 22, 2022, represents to prospective clients that:

> ABC Capital RE, LTD offers a totally passive way to hold Real Estate. No physical or administrative involvement is required from our clients. By working with ABC, you retain legal control through your own entity or in your personal name but we handle the rest of your affairs if you wish. Everything regarding your property is cared for by ABC Capital RE, LTD.

68.     Defendant, ABC Capital RE, LTD's website, as of July 22, 2022, further explains

on its "About ABC Capital" page that:

> ABC Capital RE, LTD is a one-stop shop for overseas and US real estate clients. We locate, renovate, and manage properties for hands off international/national clients. You do not have the risk of buying securities but instead your real estate properties remain in your own separate legal entity. ABC has presented our unique value proposition all over the world including cities and countries such as London, Singapore, Tel Aviv, Monaco, and New York. Our rental properties are cash-flow producing in the Philadelphia residential markets.

69.     Defendant, ABC Capital RE, LTD's website, as of July 22, 2022, represents how

it works:

> 1. Choose your income property – ABC researches and locates the best rental properties to compliment our investor's needs and portfolio. Our clients just need to select a property from our stock. Normal range for our properties is from $25,000 to $50,000.
>
> 2. We renovate it for you – The ABC Capital RE, LTD team will renovate your property in a maximum of 120 days. Our team has renovated and developed over 1,000 properties. You will receive a finished product with no effort on your part. The normal cost of our renovations range from $35,000 to $100,000. The cost of renovation is guaranteed by ABC Capital RE, LTD.
>
> 3. Start receiving your rental income – You will receive your first monthly payment never later than 121 days after your purchase and every 30 days thereafter via electronic funds transfers. First year rent income is guaranteed and starting the second year you may be able to get rent insurance if you so choose. Return on Investments are 14%+ yearly, in addition to property appreciation.

70.     Defendant, ABC Capital RE, LTD's current website, as of July 22, 2022, further

represents to prospective clients the following "Highlights":

> Home Warranty – We fully renovate the properties, including a new roof with a 15-year warranty, but clients also receive a 1-year home warranty (from June 2016, it will only be 6 months) that covers your property for all damages and repairs needed within the first year of your purchase. No maintenance expenses during the first year!
>
> Rent Protect – ABC Capital ensures that your monthly payment is delivered to you without fail. Yes, a guarantee that payments are made to

you for the first year after purchase. You may choose to pay for that insurance (if available ) in the 2nd and succeeding years.

Electronic Monthly Payments – Every month, your Return On Investment is sent to you via electronic funds transfer. Just provide us with the proper wiring instructions and your payments are sent automatically.

71.     Defendant, ABC Capital RE, LTD's website, as of July 22, 2022, also explained its "Full Renovations" to prospective clients, stating:

After you purchase a property from our catalog, our sister company, Philly Metro Builders will conduct a FULL renovation. This includes new boiler and new roofing (15 years warranty), so the property will have very little or no maintenance during the next years. The full renovation is conducted in less than 90 days after the purchase of your home.

72.     Plaintiffs reasonably and justifiably relied on the representations from Defendants as well as the representations viewed on ABC Capital's website in deciding to invest funds with ABC Capital Investments.

73.     Plaintiffs received rental payments each month for his property for a period of about a year and a half.

74.     However, Defendants never made any effort to rent out Plaintiffs' property.

75.     It is believed and averred that the RICO Enterprise operated a Ponzi-like scheme or practice, where it would use the funds of new investors, including funds earmarked for renovations of those new properties, to make the guaranteed rental payments to prior investors and/or to buy-back prior investors' properties.

76.     It is further believed and averred that the Ponzi scheme began to collapse after a RICO lawsuit was filed against some or all of the Defendants in this Court, Docket No. 19-6116.

77.     It is further believed and averred that the Buy-Back and Agreement Defendants sought to have Plaintiff Nisim Properties LLC sign was part of the RICO Enterprise and intended to avoid litigation and keep the details of the Ponzi scheme secret.

78.     The same Buy-Back and Agreement was entered into with additional victims of the RICO Enterprise, Natali Zilberman and Tamasgan Sanveto.

79.     Zilberman and Sanveto had attempted to buy properties in Baltimore, MD from ABC Capital Investments.

80.     Based on written representations from ABC Capital Investments, provided to Zilberman and Sanveto by mail and/or wires, Zilberman and Sanveto tendered money to ABC Capital Investments for the purchase of property and the renovation of property.

81.     On information and belief, the RICO Enterprise absconded with all such funds.

82.     Zilberman and Sanveto were also not fully compensated the amounts promised in the Release.

83.     On information and belief, a similar Agreement and Buy-Back deal was offered to Dr. Jose Michan-Levy when Michan-Levy complained about the RICO scheme in May 2020.

84.     On information and belief, Defendants Giovanna, Stateside Philly, ABC Horizon participated in the RICO enterprise by providing services and support to the enterprise for the purpose of furthering the enterprise's business of selling rental-properties to innocent investors with false and fraudulent promises of renovation, leasing, and property management.

85.     Accordingly, Defendants' operation of a scheme to secure money from investors to buy distressed and unoccupied properties with the false promise to renovate, facilitated with the use of the mail and the wires, constitutes a pattern of racketeering activity as defined by 18 U.S.C. § 1961.

86.     One or more members of the RICO Enterprise, believed to include, but not limited to Defendants Jay Walsh, Amir Vana, and Yaron Zir knew and intended for Plaintiff's

property to not be renovated and instead knowingly directed the RICO Enterprise to use the rehabilitation sums to pay prior investors the guaranteed rental income payments.

87.     One or more members of the RICO Enterprise, believed to include, but not limited to Defendants Jay Walsh, Amir Vana, and Yaron Zir knew and intended to buy-back Plaintiffs' property and offer (but not pay) Plaintiffs' an additional payment in exchange for a release so that the RICO Enterprise could continue to use new investors rehabilitation sums to pay prior investors the guaranteed rental income payments.

88.     As a result of Defendant's unlawful actions, Plaintiff has suffered damages.

**COUNT I**
**Violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO")**
**(Against all Defendants)**

89.     The foregoing paragraphs are incorporated herein as if set forth in full.

90.     Defendants acted together to form an association-in-fact for the common and continuing purpose to defraud persons, including but not limited to Plaintiffs, through a Ponzi-like scheme surrounding income producing properties.

91.     Defendants, myriad different companies with interlocking owners and officers, formed an enterprise and association-in-fact with an ascertainable authority structure separate and distinct from any formal structure, i.e., the RICO Enterprise.

92.     The RICO Enterprise, knowingly, fraudulently, deceptively, and unlawfully engaged in the affairs of the RICO Enterprise through a "pattern of racketeering activities", that is believed to be ongoing, as that term is defined for purpose of the RICO Act. See 18 U.S.C. §1961(1).

93.     The RICO Enterprise engaged in a pattern of indictable conduct, including conduct indictable under 18 U.S.C. 1341 (relating to mail fraud), 18 U.S.C. 1343 (relating to wire fraud), and 18 U.S.C. 1952 (relating to racketeering) in that the RICO Enterprise made use

of the facilities of interstate commerce in furtherance of its ponzi-like scheme to defraud individuals, including, but not limited to, Plaintiffs herein, Zilberman and Tabnsgo, as well as the thirty-three plaintiffs in Alaphabet Philly, LLV, et al. v. ABC Capital Investments, LLC, et al (EDPA No. 19-6116), and the plaintiffs in *Michan-Levy, et al. v. ABC Capital Investments, et al.*. (EDPA No. 21-01917).

94.     Defendants misrepresented on their website and through communications to Plaintiff Erba that using them to purchase a rental property in Philadelphia was a risk-free investment with a substantial ROI and would result in ownership of a renovated, rentable property.

95.     Defendants further misrepresented that the purchase price of the property included $35,000 which would be spent on renovations.

96.     Defendants made these representations over the wires through their website, via telephones, and via mail in connection with the real estate contract of sale they signed with Plaintiff Nisim Properties LLC.

97.     Defendants engaged in the same fraudulent transactions, using the wires and mail, with many other individuals.

98.     Defendants' records record the exact dates of each fraudulent transaction.

99.     As a result of Defendants' actions, Plaintiffs and those similarly situated have suffered damages.

**COUNT II**
**Unfair Trade Practices and Consumer Protection Law**
**(Against Defendants ABC Capital Investments, LLC, ABC Capital Realty, LLC, Giovanni Real Estate LLC, New Philly Construction, LLC, Stateside Philly, LLC, ABC Capital RE, Ltd., Jason Walsh, Amir Vana, and Yaron Zer)**

100.    The foregoing paragraphs are fully incorporated herein as though set forth at length.

101.    The Defendants domiciled in Pennsylvania jointly and severally controlled an enterprise, pursuant to which Defendant ABC Capital Investments, Inc., made fraudulent and deceptive misrepresentations designed to induce Plaintiff to enter into a real estate purchase, property renovation, and property management agreement with Defendants.

102.    Specifically, ABC Capital Investments, LLC, ABC Capital Realty, LLC,

103.    Defendants' fraudulent misrepresentations regarding the true use of Plaintiffs' funds constitute and the fact that Defendants were not going to renovate Plaintiffs' property constitutes "unfair or deceptive acts or practices" as defined by 73 P.S. §201-2(4)(iv).

104.    Plaintiffs have suffered damages as a result of Defendants' deceptive practices.

**COUNT III**
**Breach of Contract**
**(Sales Contract)**
**(Against all Defendants)**

105.    The foregoing paragraphs are fully incorporated herein as though set forth at length.

106.    Defendants contracted to renovate Plaintiffs' property so that it could be rented and made available, and that Plaintiffs could expect to realize an annual 10-15% return on investment if they purchased Defendant's property and services.

107.    Defendants never intended to honor their contract with Plaintiffs, and accordingly, breached their duty of good faith and fair dealing.

108.    Defendants did not renovate Plaintiffs' property, Plaintiffs were never able to rent the property, Plaintiff had to sell the property at a loss a less than three years after purchasing same.

109.     Accordingly, Defendants breached its contract with Plaintiffs in connection with the sale, renovation, and management of the property by failing to perform the promises contained in that contract.

110.     Moreover, Plaintiffs seek to pierce the corporate veil and hold the owners and the associated businesses liable for the breach perpetrated by Defendants, because Defendants have used their convoluted corporate structure to further their deceptive and unlawful scheme.

**COUNT IV**
**Breach of Contract / Rescission**
**(Release Agreement)**
**(Against all Defendants)**

111.      The foregoing paragraphs are fully incorporated herein as though set forth at length.

112.     Defendants, which included ABC Capital Investments, and the owners, employees, members, and any entity related to ABC, agreed to pay Plaintiffs $15,000, in monthly installments of $1000, for fifteen months, in exchange for a general release of claims related to the Plaintiffs' property.

113.     Defendants paid Plaintiffs $4000, but have made no effort to pay the balance of $11,000 since March 2020.

114.     Defendants never intended to honor their contract with Plaintiffs, and accordingly, breached their duty of good faith and fair dealing.

115.     Defendants fraudulently induced Plaintiffs to enter into the settlement agreement by failing to disclose the details of Defendants' Ponzi scheme and failing to disclose that Defendants never intended to honor their contract with Plaintiffs.

116.     Defendants have also materially breached the agreement by failing to make any payments for more than two years.

117.    Accordingly, Plaintiffs seek to rescind the Release Agreement.

**COUNT V**
**Rescission of Contract**
**(Arbitration Contract)**

118.    The foregoing paragraphs are incorporated fully herein as though set forth at length.

119.    Defendants provided in the Release Agreement that any litigation would be limited to arbitration in Philadelphia and that Pennsylvania law would apply to all substantive issues.

120.    Defendants never intended to honor their contract with Plaintiffs, and misrepresented that they intended to comply with the contract so as to avoid litigation and disruption of their Ponzi scheme.

121.    Moreover, the arbitration contract is substantively and procedurally unconscionable because it would require Plaintiff to pay to access the court system over a debt which might be limited to $15,000, and Plaintiff lacks the funds to pay for arbitration.

122.    Moreover, the contract is illegal because it was made to further Defendants Ponzi scheme which violates RICO, and to keep complaints about Defendants business practices quiet so that Defendants could continue duping new investors.

123.    Accordingly, Plaintiffs seek to rescind the Arbitration Agreement.

**COUNT VI**
**Unjust Enrichment**
**(Against all Defendants)**

124.    The foregoing paragraphs are incorporated fully herein as though set forth at length.

125.     Defendants were unjustly enriched at the expense of Plaintiff in so far as they forced Plaintiff to sell the property back to Defendants at a loss, at which point Defendants resold the property for an additional profit, and insofar as they kept $35,000 in renovation payments for renovations which were never completed.

126.     Defendants deprived Plaintiff of alternative investment options by tying up Plaintiff's principal for nearly three years.

127.     Accordingly, Defendants have been unjustly enriched at the expense of Plaintiff.

**WHEREFORE**, Plaintiffs prays this Court enter an Order providing that:

A.     Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all damages Plaintiff suffered had it not been for Defendant's illegal actions, including loss of value to property, out-of-pocket expenses, and lost rental income.

B.     Plaintiff is to be awarded treble damages pursuant to RICO and the UTPCPL.

C.     Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just and appropriate;

D.     Plaintiff is to be awarded the costs and expenses of this action, prejudgment interest, and reasonable attorney's fees as provided by applicable law; and

E.     Plaintiff's claims are to receive a trial by jury.


Respectfully Submitted,


**SWARTZ SWIDLER, LLC**

*/s/ Joshua Boyette*
Joshua S. Boyette Esq.
**SWARTZ SWIDLER LLC**
9 Tanner St. Suite 101
Haddonfield, NJ 08033
Office: (856) 685-7420

Fax: (856) 685-7417
Email: jboyette@swartz-legal.com
Attorney for Plaintiff

Date: August 5, 2022